UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK LEROY BELLE,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. ED CV 14-1016-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred in giving little weight to the opinions of two examining physicians, in discounting Plaintiff's testimony and the statements of his wife, and in assessing Plaintiff's residual functional capacity. Plaintiff also contends that the Appeals Council erred in declining to consider medical records submitted after the ALJ issued his decision. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II. SUMMARY OF PROCEEDINGS

In October and December 2010, Plaintiff applied for DIB and SSI, alleging that he had been disabled since July 2010, due to degenerative disc disease, degenerative arthritis, bulging discs, pinched nerves, disc on disc contact, shoulder surgery/partial removal of collar bone, tendon impingement in left shoulder, nervous breakdown, depression, and anxiety. (Administrative Record ("AR") 90, 153-57, 169.) His applications were denied initially and on reconsideration and he requested and was granted a hearing before an ALJ. (AR 95-99, 101-06, 108-11.) In July 2012, he appeared with counsel and testified at the hearing. (AR 47-89.) In August 2012, the ALJ issued a decision denying benefits. (AR 16-30.)

In October 2012, Plaintiff appealed to the Appeals Council. (AR 10-11.) In November 2013, he submitted additional medical records to the Appeals Council. (AR 237-38; Plaintiff's Supplement to the Joint Stipulation.) In March 2014, the Appeals Council issued an order denying review and declining to incorporate the additional records. (AR 1-6.) Thereafter, Plaintiff filed the instant action.

## III. ANALYSIS

### A. The Credibility Determination

In January 2011, Plaintiff explained in a function report that he suffered from extreme pain that prevented him from walking, standing, or sitting for longer than 15 minutes at a time. He also reported that he used a cane and, occasionally, a neck brace and that he found it hard to pay attention and to handle stress or changes in his routine. (AR 207, 209, 210.)

At the July 2012 administrative hearing, Plaintiff testified that he could only lift five or 10 pounds with his dominant left arm but

could not lift any weight above his left shoulder. (AR 63-64.) He also testified that his back pain prevented him from sitting or standing for more than 20 minutes and that he would not be able to sit for six hours or stand and walk for up to two hours in an eight-hour day. (AR 65, 77.)

The ALJ found that Plaintiff's degenerative joint disease, disc disease, major depressive disorder, and alcohol dependence were severe impairments that could reasonably be expected to cause his alleged symptoms but concluded that his allegations of disabling pain were less than fully credible because: (1) they were inconsistent with the objective medical evidence; (2) Plaintiff stopped working for reasons unrelated to his alleged impairments; and (3) Plaintiff's daily activities suggested that he could do more than he claimed. (AR 21.) For the following reasons, the Court concludes that the ALJ erred in reaching this conclusion.

ALJs are tasked with judging a claimant's credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In doing so, they can rely on ordinary credibility techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where there is no evidence of malingering, however, they can only reject a claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

The ALJ questioned Plaintiff's testimony on the ground that he stopped working for reasons unrelated to his impairments, i.e., he was fired after he sustained a DUI conviction. (AR 21.) This is a legitimate reason for questioning a claimant's testimony, *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming ALJ's

adverse credibility finding based in part on fact that claimant left his job because he was laid off, not because he could no longer work), but the record on this issue is not clear and needs to be clarified on remand.  Plaintiff contends that the ALJ misconstrued the record. Though he acknowledges that he was fired due to a DUI conviction, he contends that he had to stop working before he was fired because his back and shoulder pain prevented him from working.  He contends that he was not fired until after he had gone on disability leave for his medical condition.

     The record is not clear on this point.  Plaintiff was charged with DUI on July 4, 2010, and in April 2010, before he went on disability.  (AR 255.)  At the time, he was the program coordinator of a mental health agency, which, among other things, counseled youth on drug and alcohol abuse.  (AR 54.)  As he concedes, his DUIs were a violation of policy and a cause for termination.[1]  (AR 75.)  It is not clear from the record whether the sole reason he went on disability was his pain nor is it clear whether his failure to go back to work after he went on disability and before he was fired was because of this pain.  This assessment is made more difficult by the fact that the record does not disclose what date he was fired.  It is further complicated by the medical records.  Though the notes from the medical doctors at the time suggest that he was incapable of working due to his physical ailments (AR 304, 306-07, 310, 316), the notes from his mental health doctors at the same time suggest that he was spiraling out of control and was in need of in-patient mental health treatment

---

[1] At the hearing, Plaintiff only admitted to one DUI.

in the wake of his second DUI in four months. (AR 250-69.) On remand, the ALJ should further explore this issue.

The ALJ also determined that Plaintiff's ability to "engage in a somewhat normal level of daily activity and interaction" undermined his allegations of pain and limitation. (AR 21.) A claimant's daily activities may be grounds for an adverse credibility finding if the activities contradict other testimony or if he is able to spend a "substantial part" of his day performing physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the record does not support the ALJ's finding.

Although the ALJ focused on Plaintiff's January 2011 report that he could prepare meals, such as sandwiches and frozen dinners (AR 21), Plaintiff qualified that statement by explaining that doing so "cause[s] extreme pain - due to standing and movement of arms and shoulders." (AR 206.) Notably, Plaintiff also complained in that report that he could not complete chores alone and that standing in the shower for more than 10 minutes or extending his shoulders to wash his hair was painful. (AR 205, 206.) At the July 2012 administrative hearing, Plaintiff testified that on a typical day he would "try to clean up a little bit, dishes here and there, light laundry[]" and perhaps drive a short distance, and that he could make a quick trip to the store two or three times a week. (AR 69-70.)

This fairly minimal level of activity does not undermine Plaintiff's claims that he could not lift weight above his left shoulder or sit or stand for more than 20 minutes at a time. Nor does it suggest that the skills used to perform these activities could translate into the workplace and the ALJ did not explain how they could. Thus, this basis for questioning Plaintiff's testimony is

rejected. *See Orn*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination") (internal quotation marks omitted). On remand, the ALJ should explain in detail how Plaintiff's reported activities undermine his testimony of disabling pain.

Finally, the ALJ found that Plaintiff's allegations were inconsistent with the objective medical evidence. (AR 21.) Though it is proper for the ALJ to consider the objective medical evidence in evaluating testimony, a lack of objective medical evidence alone cannot sustain an ALJ's credibility finding. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Furthermore, the ALJ did not specify what objective evidence he was referring to or what testimony the evidence undermined and the Court is not at liberty to simply guess. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-95 (9th Cir. 2015) (reversing ALJ's credibility finding because she failed to explain what testimony was undermined by what evidence). For these reasons, the ALJ's credibility determination is reversed and remanded for further consideration.

Plaintiff also contends that the ALJ erred in rejecting statements by his wife, attesting to his difficulties. She submitted a report explaining that Plaintiff "constantly rotates" between sitting, standing, and laying down; is depressed and restless throughout the night; can perform only light household chores, such as rinsing a dish; cannot handle stress; and cannot drive for more than 30 minutes at a time. (AR 215-21.) The ALJ concluded that these statements were not entitled to any weight because the wife was not a medical professional, she was biased because she had a financial

6

interest in the outcome of the case, and her statements were not supported by the medical evidence. (AR 21.) This last reason for discounting the testimony was a valid one, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."), and is supported by at least some of the medical evidence, notably, Dr. Simmonds' assessment. As such, the ALJ's decision to reject the wife's input is affirmed.

B.   The Examining Doctors' Opinions

Plaintiff contends that the ALJ erred by discounting the opinions of the "treating physicians" and examining neurosurgeon Farhad Limonadi and by giving too much weight to examining orthopedist John Simmonds. (Joint Stip. at 6-8.) For the following reasons, this argument is rejected.

It is the province of the ALJ to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. There are three types of doctors that supply that evidence: treating doctors, examining doctors, and reviewing doctors. All things being equal, treating doctors' opinions are entitled to the greatest weight because they are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041. Examining doctors are next on the list, followed by reviewing doctors. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830.

In January 2009, osteopath John Dalle noted that an MRI showed degenerative changes, including disc bulges, in Plaintiff's cervical

spine, resulting in central canal and neural foraminal encroachment at multiple levels.  (AR 279.)  Dr. Dalle also noted that an August 2010 lumbar spine MRI revealed degenerative changes resulting in neural foraminal encroachment at multiple levels, with mild/moderate central spinal canal stenosis and moderate/severe encroachment at L4-5.  (AR 276.)  Dr. Ashwin Prabhu noted that an August 2010 left shoulder MRI revealed a rotator cuff tear and joint arthropathy.  (AR 273.)

In September 2010, Plaintiff was examined by Dr. Limonadi.  (AR 317-19.)  Plaintiff complained of three years of pain in his left shoulder, neck, left arm, and hand, and a "progressive loss of manual dexterity and inability to write."  (AR 317.)  Nevertheless, Dr. Limonadi found that Plaintiff ambulated with good gait and balance and that his strength in his upper extremities was five out of five.  (AR 317.)  Dr. Limonadi recommended evaluation by an orthopedic surgeon and appropriate treatment for Plaintiff's left shoulder arthropathy in addition to anti-inflammatory medication and physical therapy.  (AR 318.)

In November 2010, Plaintiff underwent surgery on his left shoulder to repair a rotator cuff tear.  (AR 334-38.)  In February 2011, Dr. Simmonds examined Plaintiff on behalf of the Agency.  (AR 343-47.)  He noted that Plaintiff continued to have residual pain in his left shoulder after his surgery.  (AR 344.)  He also observed that Plaintiff could move about the office freely, get on and off the operating table and assume a supine position without assistance or difficulty, and sit in apparent comfort.  (AR 345.)  He also found that Plaintiff had a normal posture and gait, without a limp, and a normal range of motion, except that Plaintiff complained of pain along the parvertebral muscle groups in his cervical spine and neck and had

a restricted range of motion in his left shoulder. (AR 345-46.)  Dr. Simmonds concluded that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk for six hours per day; frequently perform gross manipulation overhead with the left hand; perform gross manipulation overhead without restriction with the right hand; and perform fine manipulation without restriction with either hand.  (AR 347.)

The ALJ gave significant weight to Dr. Simmonds' opinion, though finding greater restrictions in some respects, e.g., in finding that Plaintiff could not climb ladders, ropes, or scaffolds.  (AR 20.)  In doing so, the ALJ did not err.  Although Plaintiff appears to complain that the ALJ did not properly consider the opinions of other treating doctors, he did not identify which doctors the ALJ supposedly ignored nor has the Court found any.  Furthermore, Dr. Simmonds' functional assessment was not contradicted by any medical opinion in the record, including Dr. Limonadi's.  As such, the ALJ's determination will not be disturbed.

Plaintiff also contends that the ALJ erred in rejecting the opinion of examining psychiatrist Morton Kurland.  (Joint Stip. at 7-8.)  Plaintiff told Dr. Kurland in March 2011 that he had been taking antidepressants since 2007 but was no longer seeing doctors because he did not have medical insurance.  (AR 357-58.)  He reported that he had no social life, suffered from insomnia and a deteriorating memory, and had thought about killing himself.  (AR 358-59.)  Dr. Kurland found that Plaintiff was significantly depressed, though not psychotic, and was oriented.  (AR 359.)  He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 48, indicating serious symptoms, including suicidal ideation, an absence of relationships, and an

inability to work. (AR 359, 360.) Dr. Kurland also filled out a medical source questionnaire in which he opined that Plaintiff would not be significantly limited in his ability to understand or carry out instructions; attend and concentrate on work; work without supervision; interact with the public, coworkers, and supervisors; adapt to changes in the workplace; and use transportation or travel to unfamiliar places. (AR 361-63.)

The ALJ gave little weight to Dr. Kurland's GAF score because it was inconsistent with Dr. Kurland's opinion that Plaintiff had no significant functional limitations and because it was belied by evidence showing that Plaintiff's symptoms were adequately controlled with medication. (AR 26-27.) This conclusion is at best only weakly supported. Though Dr. Kurland opined that Plaintiff would not be significantly limited in any functional area, it is not altogether clear whether Dr. Kurland was referring to Plaintiff's current abilities or to his abilities before he stopped working.[2] (AR 361-63.)

As for the efficacy of Plaintiff's medications, the record does not support the ALJ's findings. In September 2011, a nurse practitioner noted that the efficacy of Plaintiff's psychotropic medication was "none to partial." (AR 467.) In March 2012, the same nurse practitioner again noted that the medication was not effective and also observed that Plaintiff suffered from a depressed mood and poor sleep. (AR 439.)

---

[2] Dr. Kurland's notations suggest that his assessment was focused at least in part on Plaintiff's past limitations. For example, he noted that Plaintiff's ability to understand instructions and respond to coworkers was "ok[ay] before accident," i.e. Plaintiff's 2007 motorcycle accident, and that he "had no prob[lem]s at his job re instructions." (AR 361, 362.)

1        In April 2012, nurse practitioner Steven Hogan noted that
2   Plaintiff had been taking Seroquel since 2009 but observed that
3   Plaintiff complained of increased anger and agitation towards his wife
4   and family, depression and sadness every day, anxiety, low energy, and
5   "minimal" concentration, though his appetite was improved.  (AR 430.)
6        In the end, the Court finds that remand on the issue of
7   Plaintiff's mental limitations is warranted.  After resolving the
8   credibility issue, the ALJ should reconsider the medical evidence
9   regarding Plaintiff's mental impairments and, if he feels that it is
10  necessary, develop the record further in this regard.
11  C.   <u>The Residual Functional Capacity Determination</u>
12       Plaintiff contends that the ALJ erred in finding that he could
13  perform work as a production worker or inspector because the ALJ's
14  residual functional capacity assessment did not take into account all
15  of Plaintiff's limitations.  (Joint Stip. at 25-26.)  On remand, after
16  the ALJ reconsiders Plaintiff's credibility and the medical evidence
17  regarding his mental impairments, he should determine whether he needs
18  to reconsider the residual functional capacity finding as well.
19  D.   <u>The Medical Records Submitted After the Hearing</u>
20       After the ALJ issued his decision in August 2012, Plaintiff filed
21  a request for review with the Appeals Council.  (AR 10-11.)  In
22  November 2013, while his appeal was pending, Plaintiff submitted
23  additional medical records from September 2012 through November 2012.
24  (AR 237-38; Plaintiff's Supplement.)  In March 2014, the Appeals
25  Council denied review, declining to incorporate the additional records
26  because it found that they did not relate to the period through August
27  31, 2012, the date of the ALJ's decision.  (AR 1-6.)  Plaintiff now
28  complains that the Appeals Council should have considered the records,

which, notably, chronicle a hospitalization in September 2012 for shortness of breath. In the alternative, he argues that the Appeals Council should have explained why it chose not to consider the proffered records. (Joint Stip. at 3-4.) Defendant argues that the Appeals Council was not required to consider the additional records because they did not establish that Plaintiff had any other functional limitations during the time period for which he seeks disability benefits. (Joint Stip. at 4-5.) Here, the Court sides with Defendant.

The Appeals Council must "consider . . . any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976. The additional records proffered by Plaintiff show that, in September 2012, after complaining of shortness of breath, Plaintiff had a fainting episode at home. On September 6, 2012, a chest x-ray revealed that his heart was mildly enlarged. (Supplement at 620.) On September 7, 2012, he was admitted to the emergency room and diagnosed with hypoxemic respiratory failure. He was given oxygen and placed on bronchodilators and systemic steroids. (Supplement at 606.) Another chest x-ray on September 9, 2012, indicated improved, but not cleared, congestive heart failure. (Supplement at 632.) On September 12, 2012, Plaintiff was discharged with diagnoses of hypoxemia (low level of oxygen in the blood) with respiratory failure, community-acquired pneumonia, possible sarcoidosis, iron deficiency anemia, type 2 diabetes, and "questionmark" diastolic heart failure. (Supplement at 599.)

The new records were not relevant to the ALJ's findings and, therefore, the Appeals Council did not err in discounting them. In

his application for benefits, Plaintiff did not claim that he suffered from any heart or respiratory ailments. (AR 169.) Nor did he alert the ALJ at any time thereafter--including the July 2012 hearing--that he was experiencing any medical problems related to his heart or lungs. Moreover, the medical records through the ALJ's decision reveal only one reference to chest pain or breathing difficulties: a September 11, 2009, initial assessment questionnaire filled out by Plaintiff in which he indicated that he either had in the past or was currently experiencing chest pain and tightness. (AR 247.)

Thus, the new evidence submitted in November 2013 could not have established that Plaintiff had greater functional limitations at any time before the ALJ's August 2012 decision and, therefore, was properly rejected by the Appeals Council. *See, e.g., Bales v. Comm'r of Soc. Sec.*, 2015 WL 5686884, at *3-4 (D. Or. Sept. 25, 2015) (affirming Appeals Council's rejection of new evidence because it did not affect the ALJ's October 2013 decision that claimant was not disabled).

Plaintiff argues that the Appeals Council erred by failing to follow the requirements set forth in the Agency's Hearings, Appeals, and Litigation Manual ("HALLEX"). This argument is also rejected. HALLEX is a "purely internal manual" for the Agency and, thus, without binding legal force on this Court. *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010)).

## IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded for further consideration consistent with this Memorandum Opinion and Order.[3]

IT IS SO ORDERED.

DATED: January 20, 2016.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\BELLE, 1016\Memo Opinion and Order.wpd

---

[3] Plaintiff has requested that the Court remand the case for an award of benefits. The Court recognizes that it has the authority to do so but finds that further development of the record is necessary before it can be determined whether Plaintiff qualifies for benefits. *See, e.g., Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.").